MOORE, Judge.
 

 M.G. (“the mother”) appeals from a judgment terminating her parental rights to her two daughters, R.H., who was born on July 13, 2004, and H.H., who was born on June 30, 2005. We affirm.
 

 Procedural History
 

 On November 12, 2008, the Franklin County Department of Human Resources (“the Franklin County DHR”) filed a petition to terminate the parental rights of the mother and E.H. (“the father”) to R.H. and H.H. (“the daughters”).
 
 [1]
 
 After a May 13, 2009, trial, the juvenile court entered a judgment terminating the parental rights of the mother and the father on June 25, 2009. On July 7, 2009, the mother filed her notice of appeal.
 
 [2]
 

 Facts
 

 The Colbert County Department of Human Resources (“the Colbert County DHR”) became involved with the mother and the father on March 25, 2002, when it received a report that J.G., the mother’s then two-year-old child, had been physically abused. Tammy Wilson, a social worker for the Colbert County DHR, testified that the mother had left J.G. in the care of Ro.H., the father’s brother, and that Ro.H. had physically abused J.G. According to Wilson, at the time of that incident, J.G.
 
 *1102
 
 had bruising on his face, behind his ear, on the top of his head, and on his back; J.G. also had scratches on his neck and a knot on his head and his hair had been pulled from his scalp. Wilson testified that, after investigating that incident, the Colbert County DHR had implemented a safety plan that included placing J.G. in a home with relatives and prohibiting Ro.H. from being around J.G. According to Wilson, the mother had never regained custody of J.G., and that child ultimately was placed into foster care. Wilson testified that Ro.H. had been convicted of aggravated child abuse based on the incident.
 

 The Lauderdale County Department of Human Resources (“the Lauderdale County DHR”) became involved with the mother and the father in July 2003, when M.H., another child of the parents, was five months old. Kimberly Wright, who had been an assessment worker for the Laud-erdale County DHR in 2003, testified that she had become concerned for the safety and welfare of M.H. because, at the time she became involved with the family, Ro.H. was residing in the family home, the home appeared to be unsuitable, and the parents appeared to be unable to properly care for M.H. After the Lauderdale County DHR became involved with the family, the mother and M.H. left the family home, only to return within weeks. After receiving threats from the father’s relatives, the mother and M.H. moved into a shelter and then into the home of the mother’s cousins. After three days, the mother left M.H. with her cousins and moved back into the home with the father and Ro.H.
 

 Larry Stevenson, who had been a foster-care and adoptive-care resource worker for the Lauderdale County DHR in 2003, testified that he had helped develop a reunification plan for the parents and M.H. According to Stevenson, the parents’ individualized-service-plan (“ISP”) goals required the parents to submit to psychological evaluations and to follow the recommendations resulting from those evaluations. Stevenson testified that the Lauderdale County DHR had referred the mother to the Riverbend Center for Mental Health, and it was recommended that the mother attend the adult day-treatment program at the center. According to Stevenson, the mother was discharged from that program for noncompliance. Stevenson testified that the mother had also been required to complete parenting classes and the “Motherhood Program” but that the mother had failed to complete those programs. Stevenson testified that one of the reasons the mother gave for not completing the adult day-treatment program was that she did not like crowds. According to Wright, the parents had not, at the time of the trial, regained custody of M.H.
 

 The Franklin County DHR became involved with the family in 2008 after receiving a report from Penny Lacey, the executive director of the Phil Campbell Housing Authority, that the mother and the father had applied for housing and had indicated their intent for Ro.H. to reside with them. Lacey testified that she reported the family to the Franklin County DHR because the mother had mentioned to Lacey that Ro.H. had been accused of “messing with” the mother’s older son.
 

 Stephanie Gordon Pinkard, who investigates child-abuse and neglect complaints for the Franklin County DHR, testified that, on July 15, 2008, she visited the parents’ rental home. Pinkard testified that, at that time, the father and Ro.H. were jailed for failure to pay certain fines, but the mother was home. Pinkard observed that the daughters did not have a bed in their bedroom, that the home needed repairs, that broken glass littered the floor, and that 30 to 40 diabetic needles lay
 
 *1103
 
 exposed on the floor. She also testified that H.H. had had on a diaper that looked as if she had been wearing it all day.
 

 Pinkard testified that during her investigation she questioned the mother about Ro.H.’s 2002 abuse of M.G. and that the mother agreed not to allow Ro.H. back in the family home. Pinkard then privately questioned R.H., who was almost four years old at the time. According to Pin-kard, R.H. made allegations of sexual abuse at that time. Pinkard testified that when she confronted the mother with those allegations, the mother screamed at R.H. and called R.H. a liar. Pinkard testified that, the next day, the mother was arrested for endangering the welfare of a child based on the mother’s allegedly having been aware that the daughters were being sexually abused by Ro.H. The daughters were taken into foster care at that time.
 

 Jodie Keeton, a foster-care-division worker for the Franklin County DHR, testified that the mother had told her that, at the time the daughters were taken into foster care, R.H. was behind on her immunizations and H.H. had not been to a doctor since she was two months old. Keeton also testified that, at that time, the daughters both had severe tooth decay that required extensive dental work to correct.
 

 Greg Pinkard, a lieutenant investigator for the Franklin County Sheriffs Department, testified that both the father and the mother had admitted that they had witnessed Ro.H. sexually abusing the daughters. Specifically, Lt. Pinkard testified that the mother had admitted that she had seen Ro.H. holding the daughters on his lap and that Ro.H. had had an erection. Lt. Pinkard testified that the mother had admitted that, when she had witnessed Ro.H.’s behavior, she had “griped” at Ro.H. and had made him quit but that she had not made him leave the house and had not removed the daughters from the situation. According to Lt. Pinkard, the mother admitted to having witnessed the abusive behavior approximately seven times. Lt. Pinkard testified that the mother had been convicted of endangering the welfare of a child. Lt. Pinkard testified that Ro.H. had confessed and had been convicted of a sex crime against the daughters. Lt. Pin-kard testified that the father had also been charged with sexual abuse in the first degree and rape in the first degree against the daughters. Keeton testified that the Franklin County DHR had found the father “indicated” for sexual abuse of the daughters.
 

 Donna Lynn Horton, a nurse practitioner, testified that she had examined the daughters and that her examinations had resulted in her having concerns about the daughters’ developmental level and speech ability. Further, according to Horton, her examinations revealed multiple abrasions on H.H.’s feet. Horton testified that her examinations also revealed evidence that indicated that the daughters had been sexually penetrated. She admitted, however, that she had also been provided information that the daughters had been known to put objects in their vaginal areas and that that could have been the cause of the physical abnormalities she observed.
 

 Bonnie Lynn Atkinson, Ph.D., testified that she is a licensed psychologist and that she had evaluated the parents. According to Atkinson, the mother is in the borderline intellectual range and does not have sufficient judgment to make acceptable decisions regarding child care. Atkinson testified that the mother would require a lot of family support in order to make good parenting decisions. She also testified that the mother would require day-to-day support from the Franklin County DHR. Keeton testified that she had contacted
 
 *1104
 
 relatives but had not been able to locate an appropriate placement for the daughters.
 

 Discussion
 

 On appeal, the mother argues that the juvenile court’s findings were not based on clear and convincing evidence. Specifically, she argues that the Franklin County DHR failed to prove that her conduct or condition was unlikely to change in the foreseeable future, that termination of her parental rights was premature considering her compliance with the ISP goals, that her parental rights should not have been terminated because, she says, the Franklin County DHR failed to make reasonable efforts to reunite her with the daughters, and that a viable alternative to termination was available.
 

 “[A] juvenile court’s judgment terminating parental rights must be supported by clear and convincing evidence.
 
 Bowman v. State Dep’t of Human Res.,
 
 534 So.2d 304, 305 (Ala.Civ.App.1988). ‘Clear and convincing evidence’ is ‘ “[evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’
 
 L.M. v. D.D.F.,
 
 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala.Code 1975, § 6 — 11— 20(b)(4)). The juvenile court’s factual findings, based on evidence presented ore tenus, in a judgment terminating parental rights are presumed correct.
 
 R.B. v. State Dep’t of Human Res.,
 
 669 So.2d 187 (Ala.Civ.App.1995).
 

 “Section 26-18-7(a), Ala.Code 1975,[
 
 3
 
 ] a part of the 1984 Child Protection Act (‘the CPA’), § 26-18-1 et seq., Ala.Code 1975, specifies grounds for terminating parental rights:
 

 “ ‘If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.’ ”
 

 A.D.B.H. v. Houston County Dep’t of Human Res.,
 
 1 So.3d 53, 61 (Ala.Civ.App.2008).
 

 As to the mother’s argument that the Franklin County DHR failed to prove that her conduct or condition was unlikely to change in the foreseeable future, the evidence indicated that, as early as 2002, the mother was aware that Ro.H. had abused J.G. Despite being aware of the danger posed by Ro.H., the very next year the mother allowed Ro.H. to five in the family’s home with her and M.H. The Lauderdale County DHR became involved with the family and offered services aimed at reuniting the mother with M.H. The mother, however, refused to take advantage of those services, and M.H. was placed with relatives and had not been returned to the mother by the time of the trial. Subsequently, in 2008, Franklin County DHR workers discovered that the mother had allowed Ro.H. to live with the mother and the daughters. The mother admitted that she had known that Ro.H. was sexually abusing the daughters, having witnessed the abuse seven times, and that she had been convicted of endanger
 
 *1105
 
 ing the welfare of a child as a result of her conduct.
 

 Based on the evidence, including the mother’s long history of failing to protect her daughters, the juvenile court could have properly concluded that the mother’s conduct or condition was unlikely to change in the foreseeable future.
 
 See Ex parte State Dep’t of Human Res.,
 
 624 So.2d 589, 593 (Ala.1993) (holding that a trial court may consider the past history of a parent in determining whether to terminate parental rights). Furthermore, based on the evidence as set forth above, the juvenile court could have found that returning the daughters to the mother would not be a viable alternative in the future. The mother does not set forth any other viable alternatives in her brief to this court; therefore, we decline to address that issue further.
 
 Tucker v. Nichols,
 
 431 So.2d 1263, 1264 (Ala.1983) (holding that “the appellant has an affirmative duty of showing error upon the record”).
 

 With regard to the mother’s argument that she had complied with the ISP goals, we note that the mother merely complied with the Franklin County DHR’s request to undergo a psychological evaluation. As this court said in
 
 R.T.B. v. Calhoun County Department of Human Resources,
 
 19 So.3d 198, 205 (Ala.Civ.App.2009):
 

 “[T]he juvenile court is not limited to determining solely whether the parent has complied with the reunification plan or conditions established by DHR.
 
 See, e.g., B.L.T. v. V.T.,
 
 12 So.3d 123 (Ala.Civ.App.2008) (notwithstanding evidence of mother’s compliance with DHR’s requests, the juvenile court could properly transfer custody of child to relative based on other evidence indicating that the mother had neither the maturity nor the emotional stability to effectively parent the child). A juvenile court may consider such compliance, but only as part of its inquiry as to whether the parental conduct, condition, or circumstances that required separation of the child have been satisfactorily eliminated.”
 

 The mother points to no evidence indicating that she had successfully eliminated all the characteristics and circumstances that had previously prevented her from providing a safe home for the daughters.
 

 Finally, with regard to the mother’s last argument, Keeton testified that the Franklin County DHR had made no effort to reunite the mother with the daughters because the mother had known that Ro.H. was abusing the daughters and had chosen not to protect them.
 

 “Section 12-15-65(g)(2), Ala.Code 1975, required that, generally, ‘reasonable efforts’ be made to reunify parents and children and that the juvenile court enter orders ensuring that such efforts are being attempted.® However, ‘reasonable efforts’ toward reunification are not always required. Subsection (m) of § 12-15-65 provided, in pertinent part:
 

 “ ‘Reasonable efforts shall not be required to be made where the parental rights to a sibling have been involuntarily terminated or where a court of competent jurisdiction has determined that a parent has done any of the following:
 

 “ ‘(1) Subjected the child to an aggravated circumstance, including, but not limited to, abandonment, torture, chronic abuse, substance abuse, or sexual abuse.
 

 “ ‘(2) Committed murder or voluntary manslaughter of another child of such parent.
 

 “ ‘(3) Aided or abetted, attempted, conspired, or solicited to commit
 
 *1106
 
 murder or voluntary manslaughter of another child of such parent.
 

 “ ‘(4) Committed a felony assault which resulted in the serious bodily injury to the child or another child of such parent....’
 

 “6 By Act No. 2008-277, Ala. Acts 2008, the Alabama Legislature, among other things, amended and renumbered § 12-15-65 and enacted the Alabama Juvenile Justice Act (‘the AJJA’), codified at § 12-15-101 et seq., Ala.Code 1975. Section 12-15-65 was effective until January 1, 2009; the effective date of the AJJA is January 1, 2009.”
 

 S.T.W. v. Franklin County Dep’t of Human Res.,
 
 31 So.Bd 140, 145 (Ala.Civ.App.2009) (one footnote omitted).
 

 As set out above, reasonable efforts are not required when, among other things, the parent has “[sjubjected the child to ... sexual abuse.” “Subject” is defined as: “to bring under control or dominion.”
 
 Merriam-Webster’s Collegiate Dictionary
 
 1243 (11th ed.2003). In the present case, the evidence is undisputed that the mother allowed Ro.H. to continue to live in the home with the daughters after witnessing Ro.H. sexually abusing them on multiple occasions. By her actions, the mother “br[ought the daughters] under the control or dominion” of Ro.H.’s abuse. Accordingly, we conclude that, based on the plain language of § 12-15-65(m)(l), the Franklin County DHR was not required to make reasonable efforts to reunite the mother with the daughters.
 

 We acknowledge that the juvenile court did not rely on § 12-15-65(m)(l) in excusing the Franklin County DHR from making reasonable efforts to reunite the mother with the daughters. However, “ ‘[w]e can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper.’ ”
 
 Verchot v. General Motors Corp.,
 
 812 So.2d 296, 305 (Ala.2001) (quoting
 
 Progressive Specialty Ins. Co. v. Hammonds,
 
 551 So.2d 333, 337 (Ala.1989)). “ ‘This Court may affirm a trial court’s judgment on “any valid legal ground presented by the
 
 record Unum Life Ins. Co. of America v. Wright,
 
 897 So.2d 1059, 1082 (Ala.2004) (quoting
 
 General Motors Corp. v. Stokes Chevrolet, Inc.,
 
 885 So.2d 119, 124 (Ala.2003), quoting in turn
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003)).
 

 Conclusion
 

 Based on the foregoing, we affirm the judgment of the juvenile court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Although the Alabama Department of Human Resources filed the briefs on appeal in this matter, the Franklin County DHR filed the petition to terminate the mother's and the father's parental rights in the juvenile court and was the agency responsible for overseeing the parents’ case. The county departments of human resources are state agencies.
 
 See Ex parte Department of Human Res.,
 
 716 So.2d 717, 718 (Ala.Civ.App.1998).
 

 "The county departments of human resources serve as agents of the State Department of Human Resources; the State Department is empowered to designate the county as its agent and to assist the counties in their various duties when necessary. See § 38-6-2, Ala.Code 1975; Admin. Rules 660-l-2-.01(g) and 660-1-2-.02.”
 

 State Dep’t of Human Res. v. Estate of Harris,
 
 857 So.2d 818, 819 n. 1 (Ala.Civ.App.2002).
 

 [2]
 

 .
 
 The father has not appealed.
 

 [3]
 

 . By Act No. 2008-277, Ala. Acts 2008, the Alabama Legislature, among other things, amended and renumbered Ala.Code 1975, § 26-18-7, and enacted the Alabama Juvenile Justice Act ("the AJJA"), codified at Ala.Code 1975, § 12-15-101 et seq.