[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14684
_____

D.C. Docket No. 1:10-cr-00132-CG-N-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LARRY DOUGLAS MCPHERSON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 24, 2014)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

In August 2010 a federal grand jury returned a superseding indictment charging Larry McPherson with one count of using a computer connected to the Internet to knowingly attempt to persuade a minor to engage in sexual activity in violation of Alabama Code § 13A-6-67(a)(2), in violation of 18 U.S.C. § 2422(b) (Count 1); one count of attempting to persuade a minor to engage in sexually explicit conduct for the purpose of producing a video tape, in violation of 18 U.S.C. § 2251(a) (Count 2); and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 3). A jury convicted him of all three counts. This is his appeal.

## I.

The specific conduct giving rise to McPherson's indictment began in December 2009, when McPherson went out to dinner with his daughter, Ashley, and her daughter, B.A., who was fifteen years old at the time. At that dinner, while Ashley had gone to the restroom, McPherson told B.A. that he was going to put a video camera under her bed and that she "knew what kind of pictures he liked," which she took to mean "dirty pictures." B.A. told her mother about the incident after dinner, stating that "[h]e did it again."[1]

---

[1] B.A. clarified that when she said that McPherson "did it again," she was referring to a 2006 incident involving her grandfather. In that incident, B.A. had been "goofing off" with McPherson but became uncomfortable when he began massaging her shoulders and "just kept going further and further down [her] chest." B.A.'s mother testified at trial about the same incident, stating that B.A. had told her at the time of the incident that McPherson had unhooked

2

Ashley decided to collect evidence of her father's behavior toward her daughter. She installed a small video camera in B.A.'s bedroom, which recorded McPherson entering B.A.'s room the next morning and hiding his video camera beneath her bed. She also instructed B.A. to create a new email address to collect written evidence of her grandfather's advances.

Using that email address, B.A. emailed McPherson in April 2010 to tell him that she had fun attending her school prom. McPherson responded to that email with a bevy of questions, including the following: "[D]o you still have my camera? Did you record a lot of hot stuff? If you did, tell me about it and I'll come up there and get it. If not, that's cool, still love you." B.A. eventually wrote back to her grandfather, letting him know that she had not recorded anything.

Ashley eventually contacted the FBI about her father's actions. As a result, FBI Agent Paul Roche began posing as B.A. in email correspondence with McPherson that lasted for several weeks in June 2010. In his first series of emails with McPherson, Roche wrote, "I made a video with your camera the other day. I have it hid inside my closet. Do you still want me to use it?" In his reply email, McPherson responded, "I cannot wait to see the pictures. Did you film you using your toothbrush at night in the bathroom? . . . Film some more of your body and

---

B.A.'s bra, massaged her back, put his hands underneath her underwear in the back, and licked her stomach.

how beautiful you are.  I want to see you with your toothbrush or using your finger.  Let me know when you finish.  You can hide it outside one night and I will come to get it."   In later emails sent in that same exchange, McPherson wrote, "When I get to see you, I will teach you how to use your finger correctly to make you come.  I can teach you more about oral."  He also directed B.A. to "[t]ake full view [video], front and back, closeup of [your] VJ with your finger in it."

McPherson's sexually explicit conversations with Agent Roche escalated over time.  He told Roche in one exchange that the emails from Roche gave him an erection, and that just thinking of B.A. "does that to me."   In another email he wrote, "Do you know anything about oral sex?  That is a lot of fun and feels great. I wish we could try that, too.  Would you like to come—would you like me to come see you?  Are you home alone during the week?  I can come on Thursday or Friday to see your beautiful person."   In one of his final emails before being arrested, McPherson wrote, "I very much want to watch video with you. . . . We can make more video with us both in it together."

Roche eventually arranged for McPherson to meet B.A.  When McPherson arrived at the prearranged meeting place, FBI agents stopped his car and placed him under arrest.   After the arrest, Agent Roche conducted a search of McPherson's home.  He recovered two recordable DVDs that were manufactured in Taiwan and contained 26 video files.  Most of those files depicted B.A. "at a

4

much younger age naked at various points, . . . posing in a bathroom and also masturbating." Some of the videos depicted B.A. masturbating with a toothbrush.

As mentioned earlier, a federal grand jury charged McPherson in a three-count superseding indictment relating to this conduct. At trial, McPherson moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on all three counts after the government had presented its case. The district court denied that motion.

McPherson also moved for a mistrial based on the district court's alleged denial of his right to a public trial. He based that motion on the fact that the district court had prevented his son, Greg McPherson, from attending the trial after the government had requested that he be sequestered under Federal Rule of Evidence 615. The government made that request because both the prosecution and defense had listed him as a potential witness. The court denied McPherson's motion for a mistrial. The jury ultimately convicted McPherson on all three counts, and he was sentenced to 235 months' imprisonment.

## II.

### A. Count 1

Count 1 of the indictment charged McPherson with using a computer connected to the Internet to knowingly attempt to persuade, induce, entice, and coerce B.A. to engage in sexual activity under circumstances that would violate

5

Alabama Code § 13A-6-67(a)(2).   Section 13A-6-67(a)(2), Alabama's second-degree sexual-abuse statute, makes it a crime for an adult to subject a minor to sexual contact when that minor is between the ages of 12 and 16.

McPherson challenges his conviction on Count 1, asserting that the government presented insufficient evidence for the jury to convict on that count. He premises his challenge on the contention that a defendant can violate § 13A-6-67(a)(2) only through forceful and coercive behavior.  McPherson contends that proof of forceful or coercive behavior is required because § 13A-6-67(a)(2) makes it a crime to "subject[]" a minor to sexual contact, and the plain meaning of the verb "to subject" requires evidence of forceful or coercive conduct.  He claims that the evidence was insufficient because it "show[ed] lust and, at most, invitation to sexual conduct," but it did not show any coercion by McPherson.[2]

---

[2] Relying on the same argument that he makes in challenging the sufficiency of the evidence, McPherson also claims that his indictment was defective.  But Count 1 of the indictment specifically referred to 18 U.S.C § 2422(b), and it tracked the language of the statute. Therefore, it was not defective.  See United States v. Pena, 684 F.3d 1137, 1147 (11th Cir. 2012) ("[F]or an indictment to be sufficient, it must: (1) present the essential elements of the charged offense; (2) provide the accused notice of the charge he must defend against; and (3) enable the accused to rely upon any judgment under the indictment for double jeopardy purposes."); id. ("If an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge.") (quotation marks omitted).

McPherson further contends that the court constructively amended his indictment by allowing for conviction based on acts that were not coercive when the court instructed the jury that it could convict on Count 1 if it found that McPherson had attempted to persuade, induce, entice, or coerce an individual to engage in illegal sexual activity.  That argument is also meritless.  The district court's instructions to the jury tracked the language of the indictment and did not broaden the possible bases for conviction.  Accordingly, there was no constructive amendment of the indictment.  See United States v. Madden, 733 F.3d 1314, 1318 (11th Cir.

6

Although we usually review de novo challenges to the sufficiency of the evidence, McPherson never raised the argument to the district court that he now presents on appeal. Our review should therefore be only for plain error. See United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007) (applying plain error review to issue that was not raised with specificity in Rule 29 motion). Nevertheless, even under de novo review, McPherson's argument cannot prevail.

McPherson's challenge to his conviction on Count 1 is meritless because its underlying premise is wrong. It limits the plain meaning of "subjects" without explaining why such a narrow construction is appropriate for § 13A-6-67(a)(2). Although McPherson is correct that "subjects" means "to bring under control or dominion" or "to reduce to subservience or submission," see Webster's Third New International Dictionary 2275 (1993), he fails to mention that the word's plain meaning also includes "to cause to undergo or experience some action or treatment," Webster's New World Dictionary 1334 (3d ed. 1991), and to "expose," Random House Unabridged Dictionary 1893 (2d ed. 1993); Webster's Third New International Dictionary 2275 (1993). That plain meaning is consistent with prior decisions in our circuit. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1295–96 (11th Cir. 2007) (observing that the verb "subject" means "to

---

2013) ("A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.") (quotation marks omitted).

cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"). Most importantly, that plain meaning is also consistent with Alabama law. See M.G. v. State Dep't of Human Res., 44 So. 3d 1100, 1106 (Ala. Civ. App. 2010) (concluding that mother had "subjected" her children to sexual abuse when she allowed a man to continue to living in her home after she had witnessed him sexually abusing her children); see also Pettibone v. State, 91 So. 3d 94, 118 (Ala. Crim. App. 2011) (finding sufficient evidence to convict defendant of second-degree sexual abuse under § 13A-6-67(a)(2) without evidence that defendant had coerced or forced victim to engage in sexual contact).

McPherson's narrow definition of "subjects" also conflicts with the Alabama statutes criminalizing sexual abuse. For example, an individual commits first-degree sexual abuse under Alabama law if he "subjects another person to sexual contact by forcible compulsion." Ala. Code § 13A-6-66. Under McPherson's definition of "subjects," the "forcible compulsion" element of § 13A-6-66 would be superfluous. Because we interpret statutes in context and disfavor interpretations that render statutory language superfluous, we reject McPherson's novel interpretation. See, e.g., Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (quotation marks omitted); Wash. Mkt. Co. v. Hoffman, 101 U.S. 112, 115–16 (1879) ("[A] statute ought, upon the whole, to be so construed

8

that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotation marks omitted); In re Rothstein, Rosenfeldt, Adler, P.A., 717 F.3d 1205, 1214 (11th Cir. 2013) (referencing "the time-honored canon of construction that we should disfavor interpretations of statutes that render language superfluous") (quotation marks omitted).

The evidence was more than sufficient to convict McPherson on Count 1, and a reasonable juror could have concluded that McPherson attempted to persuade his granddaughter, via email, to engage in sexual contact with him. For example, the government presented evidence of an email McPherson wrote to Agent Roche, who was posing as B.A. In that email McPherson wrote, "Do you know anything about oral sex? That is a lot of fun and feels great. I wish we could try that, too. Would you like to come—would you like me to come see you? Are you home alone during the week?" In light of that email and all the other evidence presented by the government, the district court did not err, let alone plainly err, when it denied McPherson's Rule 29 motion on Count 1.

## B. Count 3

### 1.

Count 3 of the indictment charged McPherson with knowingly possessing and attempting to possess child pornography that was produced using materials that had traveled "in interstate commerce," in violation of 18 U.S.C.

9

§ 2252A(a)(5)(B).  McPherson contends that the district court erred in denying his Rule 29 motion on Count 3 because the government failed to prove that the pornography found in his home had been "mailed, shipped or transported in interstate commerce," as charged in the indictment.  We disagree.

a.

Our review of the district court's denial of McPherson's Rule 29 motion is de novo.  United States v. Westry, 524 F.3d 1198, 1210 (11th Cir. 2008).  We view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the jury's verdict.  Id.  "It is not our function to make credibility choices or to pass upon the weight of the evidence."  United States v. Brown, 415 F.3d 1257, 1270 (11th Cir. 2005) (citation and quotation marks omitted).  Rather, "we must sustain the verdict where there is a reasonable basis in the record for it."  Id. (citation and internal quotation marks omitted).

b.

McPherson was convicted of violating 18 U.S.C. § 2252A(a)(5)(B).  We evaluated a prior version of this statute in United States v. Maxwell, 446 F.3d 1210 (11th Cir. 2006).  The version of the statute in effect at the time of Maxwell provided, in pertinent part,

> Any person who . . . knowingly possesses any . . . film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported *in interstate or foreign*

10

> *commerce* by any means, including by computer, or that
> was produced *using materials that have been mailed, or
> shipped or transported in interstate or foreign
> commerce* by any means . . . shall be punished . . . .

18 U.S.C. § 2252A(a)(5)(B) (2006) (emphasis added); 446 F.3d at 1211 n.1.  In

Maxwell, we concluded that, under § 2252A(a)(5)(B) as it was written at that time,

Congress had "not elected to criminalize possession of all child pornography."  Id.

at 1218.  But, we recognized that, under its Commerce Clause powers[3] and the

Supreme Court's holding in Raich, Congress could constitutionally regulate "all

intrastate possession of child pornography, not just that which has traveled in

interstate commerce or has been produced using materials that have traveled in

interstate commerce."  Id. (emphasis in original).  This is because "where Congress

has attempted to regulate (or eliminate) an interstate market, Raich grants Congress

substantial leeway to regulate purely intrastate activity (whether economic or not)

that it deems to have the capability, in the aggregate, of frustrating the broader

regulation of interstate economic activity."  Id. at 1215.  And, "Congress, through

---

[3] The Commerce Clause of the United States Constitution gives Congress the "power to regulate; that is, to prescribe the rule by which commerce is to be governed."  United States v. Lopez, 514 U.S. 549, 533, 115 S. Ct. 1624, 1627 (1995) (citation and quotation marks omitted).  The Supreme Court has "identified three general categories of regulation in which Congress is authorized to engage under its commerce power":  Congress can regulate (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce, and (3) activities that substantially affect interstate commerce.  Gonzales v. Raich, 545 U.S. 1, 16-17, 125 S. Ct. 2195, 2205 (2005).

11

its comprehensive regulation, of which 18 U.S.C. § 2252A is a part, has attempted

to eliminate the entire market for child pornography." Id. at 1217.

Significantly, Congress amended 18 U.S.C. § 2252A in 2008 by replacing

all instances of "in interstate" with "in or affecting interstate" commerce.  Effective

Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 103.  As a

result, the version of § 2252A in effect at the time of the conduct charged in

McPherson's Superseding Indictment provided, in pertinent part,

> Any person who . . . knowingly possesses . . . any . . .
> film, videotape, computer disk, or any other material that
> contains an image of child pornography that has been
> mailed, or shipped or transported *using any means or
> facility of interstate or foreign commerce or in or
> affecting interstate or foreign commerce* by any means, .
> . . or that was produced *using materials that have been
> mailed, or shipped or transported in or affecting
> interstate or foreign commerce by any means* . . . shall
> be punished . . . .

18 U.S.C. § 2252A(a)(5)(B) (2009) (emphasis added).[4]  "That phrase—'affecting

commerce'—normally signals Congress'[s] intent to exercise its Commerce Clause

powers to the full."  Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273,

115 S. Ct. 834, 839 (1995).

Indeed, other courts have concluded that Congress amended the statute to

regulate child pornography to the broadest allowable extent.  See, e.g., United

---

[4] This provision of § 2252A remains the same today.  See 18 U.S.C. § 2252(a)(5)(B)
(2012).

States v. Lewis, 554 F.3d 208, 216 (1st Cir. 2009); United States v. Wright, 625 F.3d 583, 599-600 (9th Cir. 2010) (citing 153 Cong. Rec. H13591-92 (daily ed. Nov. 13, 2007) (statement of Rep. Conyers) (stating Congress's intent "that the prohibitions against child pornography reach the full extent of its constitutional authority"); id. at H13592 (statement of Rep. Goodlatte) ("The proposed legislative fix . . . would expand the jurisdiction to prosecute these crimes when the Internet is used. This is the broadest assertion of interstate commerce power that the Congress can make consistent with the Constitution.")). We agree and find that § 2252A, as amended by Congress in 2008, signals Congress's exercise of its full Commerce Clause powers to criminalize all possession of child pornography, including purely intrastate possession.

c.

Despite the fact that the broader, amended version of § 2252A was in effect at the time that McPherson allegedly engaged in the conduct charged by the Superseding Indictment, the Superseding Indictment charged only that McPherson "knowingly possessed and attempted to possess material that contains images of child pornography that was produced *using materials that have been mailed, shipped and transported in interstate commerce* . . . ." (emphasis added). It did not use the "in or affecting interstate or foreign commerce" language from the operative statute. Thus, while we recognize that McPherson's alleged conduct

13

could have been reached by the operative version of § 2252A—even if it had been entirely intrastate, without any mailing, shipping, or transporting of materials over state lines—we must address his conviction under the actual language in his indictment. "A fundamental principle stemming from the Fifth Amendment is that a defendant can be convicted only for a crime charged in the indictment." United States v. Dortch, 696 F.3d 1104, 1111 (11th Cir. 2012) (quoting United States v. Figueroa, 666 F.2d 1375, 1379 (11th Cir. 1982). Therefore, the question is whether, by charging that the child pornography was produced using materials that traveled only "in interstate commerce," the government imposed on itself an obligation to prove that such materials crossed state lines.

Notwithstanding the fact that the indictment as drafted did not purport to encompass the full jurisdictional reach of § 2252A(a)(5)(B), we find that there was sufficient evidence to satisfy the jurisdictional component as it was charged in the indictment. We have explained that "the jurisdictional language 'in commerce' invokes Congress' authority to regulate . . . the channels within which people and goods move through the flow of commerce, as well as the instrumentalities used to facilitate that movement." United States v. Ballinger, 395 F.3d 1218, 1233 (11th Cir. 2005) (en banc). Channels of commerce, "the interstate transportation routes through which persons and goods move," United States v. Morrison, 529 U.S. 598, 613 n.5, 120 S. Ct. 1740, 1752 n.5 (2000), include highways, railroads, navigable

14

waters, and airspace.    Ballinger, 395 F.3d at 1225-26 (collecting cases). Instrumentalities of commerce, "the people and things themselves moving in commerce, includ[e] automobiles, airplanes, boats, and shipments of goods." Id. at 1226 (collecting cases).

At trial, evidence showed that the materials McPherson used to produce child pornography, including the DVDs containing child pornography that were recovered from McPherson's home, traveled in the channels of interstate commerce with instrumentalities of interstate commerce.  Evidence showed that McPherson traveled with the DVDs from his home in Daphne, Alabama, to his daughter's house in Birmingham, Alabama, where the filming occurred, and back again.  This intrastate travel necessarily involved the use of roads and highways, which are channels of interstate commerce.  Moreover, the parties stipulated that the DVDs had been manufactured in Taiwan.  Even were we to assume that the DVDs traveled directly from Asia to Alabama, which we think unlikely, they were necessarily transported to Alabama using an instrumentality of interstate commerce, such as a plane or a boat.  And, they also must have traveled through interstate airspace or waters, given Alabama's geographic location in the United States.  Thus, we conclude that there was sufficient evidence in the record to satisfy the jurisdictional component of the crime as charged beyond a reasonable doubt, and McPherson's Rule 29 motion on Count 3 was properly denied.

2.

McPherson also challenges his conviction on Count 3 based on the district court's alleged constructive amendment of his indictment. McPherson claims that the court constructively amended his indictment when it instructed the jury that it could convict McPherson upon finding that the child pornography recovered from his house "had been produced using materials that had been mailed, shipped, or transported in interstate *or foreign commerce*." (emphasis added).

As McPherson did not object to the jury instructions on Count 3, we review for plain error. See United States v. Madden, 733 F.3d 1314, 1316, 1319-20 (11th Cir. 2013). Under plain-error review, we cannot correct an error unless it is, in fact, an "error"; it is plain, and it affects substantial rights. Johnson v. United States, 520 U.S. 461, 466-67 (citation omitted). If all three of these requirements are satisfied, we may exercise our discretion to correct the error, but only if the plain error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 467 (citation and internal quotation marks omitted).

It is error for a court to constructively amend an indictment. See Madden, 733 F.3d at 1322. A constructive amendment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." Dortch, 696 F.3d at 1111 (quotation marks and citation omitted). Here, the jury instructions may have

16

broadened the bases for convicting McPherson under Count 3 by using the language "in interstate or foreign commerce" when the indictment charged only "in interstate commerce." This was error. But even assuming without deciding that the error was plain and that it affected McPherson's substantial rights, under the particular circumstances of this case, we cannot say that it "seriously affect[ed] the fairness, integrity or public reputation of our judicial proceedings." United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993).

The instruction about which McPherson complains regarded the element of the crime requiring movement in commerce. McPherson's written factual stipulation that the DVDs came from Taiwan, however, necessarily established this element under both the interstate and foreign-commerce versions of the element and effectively left nothing for the jury to decide. See United States v. Urbana, 412 F.2d 1081, 1083 (5th Cir. 1969)[5] (holding that the district court's failure to instruct the jury on the crime's "interstate movement" element was not plain error where the defendant stipulated to that element"). In particular, McPherson's stipulation that the DVDs were manufactured in Taiwan removed any question that the DVDs had moved "in interstate commerce" because the DVDs could not possibly have gotten from Taiwan to Alabama without traveling through the

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

channels of both interstate and foreign commerce.  Given McPherson's stipulation to the facts that necessarily satisfied the commerce element of the crime—whether interstate or foreign, reversing McPherson's conviction on Count 3 because the court instructed the jury on foreign commerce in addition to interstate commerce would not preserve the integrity of our judicial proceedings but would instead undermine it.

The Supreme Court has consistently and unanimously held that the plain-error rule should not be used to reverse, on purely technical grounds, an otherwise obviously proper conviction.  See United States v. Cotton, 535 U.S. 625, 634, 122 S. Ct. 1781, 1787 (2002); Johnson v. United States, 520 U.S. 461, 470, 117 S. Ct. 1544, 1550 (1997).  In this case, given the stipulation, the evidence on both versions of the commerce element (foreign and interstate) was "overwhelming" and "essentially uncontroverted at trial."[6]  Johnson, 520 U.S. at 470, 117 S. Ct. at 1550.  Under these circumstances, the Supreme Court has concluded that reversal is "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings'. . . ."  United States v. Cotton, 535 U.S. 625, 634, 122 S. Ct. 1781, 1787 (citation omitted).  So we decline to reverse.

---

[6] These facts distinguish this case from Madden, where we held that the constructive amendment of the indictment, by charging the jury with an alternative method of conviction, "seriously affect[ed] the fairness, integrity, and public reputation of judicial proceedings.  733 F.3d 1314, 1322-23.  In Madden, unlike here, the evidence about the constructively amended element was contested at trial, and it raised questions about the defendant's guilt.  See id. at 1323.

18

### C.  Sequestration of Greg McPherson

McPherson next challenges the district court's decision to sequester his son, Greg McPherson, from attending his trial under Federal Rule of Evidence 615.  We review the district court's decision only for an abuse of discretion.  See United States v. Alvarado, 647 F.2d 537, 540 (5th Cir. Unit A June 1981).

Both the government and defense listed Greg McPherson as a potential witness prior to trial.[7]  As a result, upon request of one of the parties, the district court was required to sequester Greg McPherson to prevent him from hearing the testimony of other witnesses.  Fed. R. Evid. 615 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.").  The government made that request before opening arguments began in the trial, and the court had McPherson's son leave based on that request.  Although Rule 615 contains an exception where the person to be excluded is "essential to presenting [a] party's claim or defense," see Fed. R. Evid. 615(c), McPherson did not argue either before the district court or on appeal that his son was "essential" to presenting his defense.  Instead, he simply claims that the

---

[7] Although McPherson suggests that the government listed Greg McPherson as a potential witness in a bad-faith attempt to exclude him from attending the trial under Rule 615, Fed. R. Evid., that allegation does not merit further inquiry, considering that the defense also listed McPherson's son as a potential witness.  And, contrary to McPherson's contention, the fact that McPherson ultimately struck his son from his witness list does not alter the analysis.  The defense's listing of Greg McPherson as a witness in the first instance demonstrates his relevance to the case and rebuts McPherson's allegations that the government's listing of McPherson was in bad faith.

exclusion "rob[bed] the courtroom of a concerned and valuable observer, embolden[ed] witnesses, demoralize[d] the accused, and undermine[d] the legitimacy of the [trial]."

Although courts should be reluctant to close the courtroom to a defendant's family during trial, see In re Oliver, 333 U.S. 257, 271–72, 68 S. Ct. 499, 507 (1948), "[t]he Sixth Amendment right to a public trial is not absolute and must, on occasion, give way to other rights and interests," United States v. Brazel, 102 F.3d 1120, 1155 (11th Cir. 1997). The right to a public trial is not an end in itself. Instead, it serves "to ensure that judges, lawyers, witnesses, and jurors perform their functions responsibly; to encourage witnesses to come forward and discourage perjury; and to allow the public to see that a defendant is tried fairly." Id.

The burden is high for a party seeking total closure of a proceeding. See id. ("[A] party seeking total closure of a proceeding would have to show that the measures taken were necessary to serve an overriding interest, and the court would have to consider other alternatives and make findings adequate to support closure."). However, the sequestration of an individual witness is not a total closure of proceedings. See Douglas v. Wainwright, 739 F.2d 531, 533 (11th Cir. 1984). Instead, it qualifies as merely a "partial closure." See id. (finding only a

20

"partial closure" where "members of the press and the defendant's relatives and clergymen were present at the trial").

When a partial closure is sought, the requesting party need only provide a "substantial" reason for the closure. Brazel, 102 F.3d at 1155. Substantial reasons have included protecting witnesses from unnecessary insult to their dignity, Douglas, 739 F.2d at 533, and protecting testifying witnesses from intimidation by spectators, Brazel, 102 F.3d at 1155–56. We conclude that compliance with Rule 615 similarly provides a "substantial" reason for a partial closure. See United States v. Blanche, 149 F.3d 763, 769–70 (8th Cir. 1998) (rejecting defendant's claim that his Sixth Amendment right to a public trial was violated when the district court, pursuant to Rule 615, refused to allow his sister to be in the courtroom for part of trial); United States v. Juarez, 573 F.2d 267, 281 (5th Cir. 1978) (similar); see also United States v. Collins, 340 F.3d 672, 681 (8th Cir. 2003) (noting that Rule 615 "prevent[s] witnesses from tailoring their testimony to that of prior witnesses and [aids] in detection of dishonesty"); Opus 3 Ltd. v. Heritage Park, Inc., 91 F.3d 625, 628 (4th Cir. 1996) ("[Rule 615] is designed to discourage and expose fabrication, inaccuracy, and collusion."). Therefore, the district court did not abuse its discretion in sequestering Greg McPherson.

21

D.  Conferences Held in McPherson's Absence

Finally, McPherson contends that the magistrate judge and district judge erred when they held a pretrial conference[8] and the charge conference in chambers, rather than in open court.  He did not object to having these conferences held in chambers, so we review his claim only for plain error.  See United States v. Sherman, 821 F.2d 1337, 1338–39 (9th Cir. 1987) (applying plain-error review to district court's decision to conduct charge conference without defendant present); see also United States v. Smith, 230 F.3d 300, 309 (7th Cir. 2000) (similar).  To prevail under the plain-error standard, McPherson must show (1) that there was error, (2) that it was plain, and (3) that it affected his substantial rights.  United States v. Rodriguez, 627 F.3d 1372, 1380 (11th Cir. 2010).  Even if he is able to meet those three requirements, we may exercise our discretion to notice the forfeited error only if it "seriously affect[ed] the fairness of the judicial proceedings."  Id.  Because it is difficult to meet, the plain-error standard is a "daunting obstacle" for an appellant to overcome.  United States v. Pielago, 135 F.3d 703, 708 (11th Cir. 1998).

McPherson has not carried his burden of showing plain error.  Assuming that it was error for the magistrate judge to hold a pretrial conference without the defendant's presence, that error was not plain.  Under Federal Rule of Criminal

---

[8] The pretrial conference was conducted by a magistrate judge instead of by the district judge.

22

Procedure 43(a), a defendant <u>must</u> be present for only three pretrial events:  "the initial appearance, the initial arraignment, and the plea."  The rule makes no mention of pretrial conferences, like the one at issue here, where the parties discuss scheduling issues, pending motions, and a single stipulation.  McPherson also fails to identify a single decision, from either the Supreme Court or this circuit, which held that a defendant is entitled to be present for a pretrial conference.  Therefore, he has failed to establish that the pretrial conference conducted in his absence constituted plain error.  <u>See</u> <u>Rodriguez</u>, 627 F.3d at 1381 ("In order to be plain enough for the plain error rule, an asserted error must be clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or this Court.").

McPherson has also failed to establish that conducting the charge conference without him qualifies as plain error.  Federal Rule of Criminal Procedure 43(b)(3) specifically provides that a defendant need not be present for any "conference or hearing on a question of law."  The district court was not required to conduct the charge conference with the defendant present because the substance of the conference concerned legal issues relating to the jury instructions.  Therefore, the district court did not commit any error, let alone plain error.

We also note that McPherson has failed to show that his absence from these two conferences affected his substantial rights.  To satisfy that prong of the plain-

23

error standard, an appellant must show that the purported error "affected the outcome of the district court proceedings" so that there exists a "reasonable probability of a different result but for the error." Rodriguez, 627 F.3d at 1382 (quotation marks omitted). If the effect of an error is uncertain, an appellant has failed to prove that his substantial rights were affected. Id. In this case, McPherson contends that, if he had been present for the charge conference, he would have noticed that the court was misinterpreting an evidentiary stipulation as a concession on the jurisdictional element of each count in the indictment. But he fails to explain why he would have been likely to notice that alleged misinterpretation, particularly in light of the fact that his own attorney actively participated in incorporating the evidentiary stipulations into the jury instructions. While there may be some remote chance that McPherson would have complained of the wording of the jury instructions as they related to the stipulations, the fact that we are uncertain that a defendant like McPherson, untrained in the law, would have done so means that he has not carried his burden under the plain-error standard's third prong. Id.

## III.

For the reasons explained above, we affirm McPherson's convictions on all counts.

**AFFIRMED.**

24